FRANCES M. CONNELY v. RUTH W. PUTNAM ET AL.

Decided June 3, 1908.

**1.—Marketable Title—Definition.**

A "marketable title" is one that is free from reasonable doubt. A title tendered by an executrix to lands of an estate, considered, and held a marketable title.

**2.—Wills—Estate—Executrix—Power to Sell.**

A testator by his will directed that his estate should "be kept together" until his children, therein named, should come of age or be married; that his said children should be "kept, maintained and educated by his executrix in a manner suitable to their circumstances in life," and "for this purpose" gave his executrix "full and unlimited power to manage, control and dispose of" his estate in the same manner as he could do were he alive, as in her discretion seemed best for the estate and his children. Held, that the executrix had authority during the minority of the children, for the purpose of maintaining and educating them, to sell and convey land of the estate, and that this right was so free from doubt as to render the title tendered by her to a prospective purchaser a "marketable title."

**3.—Contract of Sale—Earnest Money—Forfeiture.**

A certain sum of money was paid by a purchaser to a vendor of land with

the understanding that the money was to be applied as a part of the purchase money if the sale was consummated, or to be forfeited to the vendor as liquidated damages in case he tendered a marketable title to the land by a certain date and the purchaser refused to consummate the purchase; within the time stipulated the vendor tendered a title which the purchaser, on the advice of his lawyer, refused to accept on the ground that it was not a marketable title. In a suit by the purchaser for the earnest money, evidence considered, and held sufficient to support a judgment for the defendant.

Appeal from the District Court of Jackson County.    Tried below before Hon. James C. Wilson.

*Guy Mitchell*, for appellant.

*Henry T. Chivers*, for appellees.

NEILL, Associate Justice.—The appellant, Mrs. F. M. Connely, sued the appellee, Mrs. Ruth W. Putnam, as executrix of the estate of L. McHenry, deceased, and her husband, S. M. Putnam, defendants below, to recover $1,000 paid by plaintiff to Mrs. Putnam as such executrix in pursuance of the contract for sale of certain lands hereinafter referred to in our conclusions of fact, and it is from a judgment in favor of defendants against the plaintiff that this appeal is prosecuted.

*Conclusions of fact.*—The facts, which are undisputed and are agreed to by the parties, are in substance as follows:

On February 19, 1907, the plaintiff contracted with defendants, in writing, to purchase certain lands in Jackson County, Texas, and paid them the sum of $1,000, upon the following conditions: (1) That the money was to be considered a part of the cash payment for the land in the event the sale was consummated; (2) it was to be forfeited to defendants as liquidated damages in case they tendered a marketable title to said lands on or before August 19, 1907, and plaintiff should refuse to comply with the terms of sale; and (3) it was to be repaid to plaintiff in case a marketable title was not tendered her on or before said date.

Ruth W. Putnam is the surviving wife of L. McHenry, deceased, and executrix of his estate under will duly probated in Jackson County, Texas, and the land contracted for by plaintiff was the community property of L. McHenry and his wife who was made the executrix of his will, an undivided one-half of the same, upon the testator's death, being the property of his wife, and an undivided one-half being the property of their three daughters, Lula, Dora and Mary McHenry, who were the devisees in his will.    The will contained the following items:

"Item second:    I desire, will and direct that all my estate of whatever kind and wherever situated, both real and personal, be kept together until the conditions hereinafter stated be fulfilled, believing the same to be for the best interest of my said estate, and for this purpose I give to my beloved wife, Ruth W. McHenry, full and unlimited power to manage, control and dispose of my said estate in the same manner as I myself could were I alive, as in her discretion seems best for my estate and my three children, Lula, Dora and Mary McHenry.

"Item third: I will and direct my said wife, Ruth, to keep and maintain and educate my said three children in a manner suitable to their fortune, state and circumstance in life.

"Item fourth: I will, desire and direct that on the coming of age or marriage of any of my said three children then my said above estate shall be so divided that the said child so marrying or coming of age shall have her portion according to the laws of descent and distribution of Texas, said division to be made at the option of said child, but the residue to be kept intact until said condition again happens, and so on until each and every one of my heirs has her legal portion."

Abstracts of title were furnished by defendants to plaintiff within the time stipulated by the contract, and examined by her attorney and upon his advice she refused to take the title shown by the abstract for the following reasons only: (1) Because under. the provisions of McHenry's will the defendant, Ruth W. Putnam, as executrix, had no right to convey to plaintiff any part of the land belonging to the devisees; and (2), because the will is an ill-expressed and inartificial instrument, the provisions of which left the power of the executrix to make the sale contracted for in so much doubt and uncertainty as to render the title unmarketable.

After the contract between the parties was made, and prior to August 19, 1907, Lula McHenry, a minor and one of the devisees in the will, married Jewell Weatherly, and, with her husband, offered to join with defendants in making deed, on the above mentioned date, to plaintiff for the land contracted for by her. The plaintiff declined to accept the proffered offer of the deed on account of the objections to the title, above stated, and demanded of defendants a repayment of the $1,000 paid by her to them upon the conditions of the contract before mentioned. Defendants refused to accede to the demand, whereupon plaintiff instituted this suit to recover the money with interest thereon from August 19, 1907, and the case was tried before the court without a jury and judgment was rendered in favor of the defendant, as above stated.

*Conclusions of law.*—The question to be determined is: Does the abstract, in view of the facts, show a "marketable title?" Such a title is one free from reasonable doubt. Greer v. International, etc., Co., 43 Texas Civ. App., 370; Maupin on Marketable Title, 705; Austin v. Barnum, 53 N. W., 1132; Vought v. Williams, 24 N. E., 195, 8 L. R. A., 591, 17 Am. St. Rep., 634; Holmes v. Woods, 168 Pa., 530, 32 Atl., 54. If, therefore, there be no reasonable doubt either as to a matter of law or fact regarding the title, it must be deemed marketable. As the facts are undisputed, if there is such a doubt it must be as to a matter of law. The only doubt of this kind which can possibly arise is in regard to the power of Mrs. Putnam, as executrix of the will of McHenry, to convey the land. Indeed, this is the only point of contention, the insistence of appellant being that the will is of such doubtful construction as to raise, at least, a reasonable doubt as to the power of the executrix to make the conveyance.

The will directs that the estate of the testator "be kept together" until certain conditions thereinafter stated "be fulfilled," and for "this purpose" gives the executrix "full and unlimited power to manage, con-

trol and dispose" of it in the same manner as he could were he alive, as in her discretion seems best for the estate and his three children named therein. The power to "manage and control" evidently gave the possession, superintendence and direction of the estate to the executrix, and authority to exercise a general restraint over the same. Carlton v. Goebler, 94 Texas, 93; Randall v. Josselyn, 10 Atl. 577. But this is not the limit of the power conferred upon the executrix. She is also given unlimited power "to dispose of" the estate. To dispose of means "to part with; to relinquish; to get rid of—as to dispose of a house." Webster's Dictionary. "To dispose of means to alienate; to effectually transfer." 9 Am. and Eng. Ency. of Law, 540. All these powers, *i. e.,* to manage, control and dispose of, are given to the executrix to the same end and purpose; and if there is a limitation upon one, there is a limitation upon all. They are conferred for the purpose of keeping the estate together until certain conditions stated in the will should be fulfilled; and they must have been deemed by the testator essential or expedient to effect or carry out this purpose, else they would not have been conferred. To say that such or any of these powers were not necessary or expedient to effect such purpose would be to substitute the opinion of another for the judgment of the testator, making a different will from the one made by him, which no one has authority to do. A court may declare a will void if, in fact, it is so; but it has no authority whatever to make or amend a will for anyone. A will speaks from the date of the death of the testator, after which, no one in the world has the right to speak for him.

By directing that the estate "be kept together," the testator evidently meant that it should not be partitioned until conditions mentioned therein should be fulfilled, *i. e.,* not until the three children had been kept, maintained and educated by the executrix in a manner suitable to their fortune, state and circumstances in life and upon the attainment of the majority or marriage of one of them, at which time she was to have her portion according to the laws of descent and distribution of the State of Texas, it being left to the option of such child whether such *division* of the estate should be made then. To give the words "be kept together" any other meaning would be to thwart the very purpose of the testator as expressed by his will. For the executrix could not keep, maintain and educate the three children in a manner suitable to their fortune, state and circumstances in life without *disposing* of some of the estate of the testator for such purpose, which would *ipso facto* separate the property used to that end from the part remaining undisposed of. To effect this purpose she was given unlimited power to manage, control and dispose of the estate in the same manner the testator could if he were alive as in her discretion seemed best for the estate of the three children. There was no limitation upon the power given the executrix to effect the purpose. Its exercise to that end was left entirely to her discretion, which, unless manifestly abused, could not be curtailed or controlled by the courts, nor questioned or interfered with by anyone. Her power of disposition was not limited to the money on hand, nor to the personal property of the estate, but extended to every acre of land belonging to the estate, as well. She could sell and convert into money the entire property, real and personal, devised in the exer-

cise of her discretion if she deemed it best for the estate of the three children. But whatever form the property took, the will required that the estate "be kept together"—in the same sense stated—until the conditions stated were fulfilled. Her power to keep, manage and control the residue of the estate, after giving the child first coming of age or marrying her share, continued in the same manner, and was not limited by the use of the word "intact," appearing in the fourth item of the will, its evident meaning, as there used, being the same as the word, "together," appearing in the second item; for one of the definitions given by Webster of the word is "complete or entire." It is apparent the testator used it in this sense, intending that the residue of the estate, after making the first allotment, should be kept together, managed, controlled and disposed of by the executrix, i. e., for the purpose of maintaining and educating the other two children, and not partitioned between them until one should become of age or marry and that one to receive her share of the residue.

We do not think there can be any reasonable doubt about this being the clear and obvious construction of the will. In view of which it is clear that the executrix had the same power to dispose of the property concerning which the contract was made as the testator would himself have if living. Therefore, as the daughter of McHenry, who married Jewell Weatherly after the contract of sale was made, and her husband offered to join the defendants in a deed conveying the land to plaintiff, the title she would have obtained through such deed would have been free from a reasonable doubt, and, hence, marketable title. The judgment is affirmed.

*Affirmed.*