**AUSTIN, Banking Com'r, v. CARTER.**
**(No. 260.)**

Court of Civil Appeals of Texas. Eastland.
April 22, 1927.

Rehearing Denied June 24, 1927.

1. **Vendor and purchaser** ⬤⟲130(2)—"Marketable title" in land contract requires title free from reasonable doubt.

Provision for "marketable title" in contract for sale of real estate provides for title free from reasonable doubt and such as prudent man well advised as to facts and their legal bearings could be willing to accept.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Marketable Title.]

2. **Vendor and purchaser** ⬤⟲130(2)—Title, resting on presumption of fact which in event of suit would become jury question, is unmarketable; "marketable title."

Among titles which are classed as unmarketable are those which rest on presumption of fact which, from circumstances of case, would in event of suit probably become issue to be decided by jury.

3. **Vendor and purchaser** ⬤⟲130(2)—Where title of vendor promising marketable title appears on face to be reasonably doubtful, equity will refuse specific performance.

Where title exhibited by vendor promising marketable title on its face appears to be reasonably doubtful, court of equity will refuse decree of specific performance, since equity does not ordinarily concern itself with questions relating to title of real estate.

4. **Vendor and purchaser** ⬤⟲130(2)—Doubt as to whether title, based on power of sale, is marketable may arise as to construction of power or existence of facts justifying its exercise.

Where title of vendor is based on power of sale, doubt may arise under requirement for marketable title, either as to construction of

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

power or as to existence of facts necessary to justify its exercise.

**5. Mortgages ⬅➡360—Sale under power of sale in trust deed is invalid unless provisions are strictly followed.**

To make valid a sale by execution of power of sale contained in deed of trust, provisions therefor must be strictly followed.

**6. Mortgages ⬅➡342—Sale by substitute trustee appointed without authority under trust deed is void.**

Sale by substitute trustee in deed of trust appointed by one without authority is void.

**7. Mortgages ⬅➡342—Substitute trustee cannot be appointed under trust deed for original trustee's refusal to act, until demand is made on original trustee and he refuses to act.**

Appointment of substitute trustee is not authorized under deed of trust providing for such appointment in case original trustee refused to act, until demand has been made on original trustee and refusal by him.

**8. Vendor and purchaser ⬅➡130(2)—Vendor's title based on trust deed executed by corporation president without directors' consent, under which there was sale by substitute trustee, held insufficient to justify specific performance of contract requiring marketable title.**

Where contract for sale of real estate required marketable title, vendor *held* not entitled to specific performance, where title rested on deed of trust executed by corporation president under its seal without showing of directors' consent, and there was sale under such deed by substitute trustee appointed by one whose interest in transaction was shown only by his own declaration, that of substitute trustee, and another on information and belief, especially where recital in appointment was contradicted by recital in substitute trustee's deed.

**9. Corporations ⬅➡432(3)—Rule that deed by corporation's president without showing of directors' consent is prima facie binding on corporation creates only rebuttable presumption.**

Rule which makes deed executed by president of corporation under its corporate seal, conveying its real estate without referring to or showing previous consent of board of directors, prima facie binding on corporation, creates but rebuttable presumption.

**10. Mortgages ⬅➡335—Trustee under trust deed may foreclose only on request of holders of all notes.**

Trustee under deed of trust cannot foreclose except on request of holders of all notes.

**11. Corporations ⬅➡426(2)—Affidavits tending to show corporation's ratification of president's execution of trust deed, unless made by authorized agents, cannot operate as estoppel against corporation.**

Affidavits tending to show ratification by corporation of act of president executing deed of trust cannot operate as estoppel against cor-

poration, unless made by its agents authorized to act for it.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit by Chas. O. Austin, Banking Commissioner, against Barney Carter. Judgment for defendant, and plaintiff appeals. Affirmed.

Funderburk & Richardson, of Eastland, for appellant.

G. W. Dunaway, of Ranger, and Conner & McRae, of Eastland, for appellee.

PANNILL, C. J. Appellant's suit was for specific performance of a contract of sale by appellant to appellee of certain real estate situated in the city of Ranger. The agreement provided that appellant would furnish to appellee a complete abstract of title disclosing a good and marketable title to the property. Appellee was to have a specified time in which to examine the abstract and furnish appellant a written report setting forth the objections made thereto and appellant thereafter a like time to cure the defects. The title as shown by the abstract was rejected by the appellee, and suit followed. The trial was to the court without a jury, and judgment for appellee, from which this appeal has been prosecuted.

The trial court found that the abstract, which was introduced in evidence, did not show a marketable title and refused to require the appellee to specifically perform the contract. It is not considered necessary to state in detail the several objections to the title as shown, nor to all the contentions made by the respective parties, but only so much of the title will be stated as is necessary to illustrate the points which are considered as controlling the disposition of this case.

The title was deraigned from a sale under a trust deed purporting to have been executed by the Guaranty Building Company to the Guaranty State Bank of Ranger. The trust deed was executed by the president of the Guaranty Building Company under the seal of the corporation; but no reference was made in the deed to any authority from the directors for the president to execute the deed. The deed of trust contained this provision:

"It is expressly agreed that the recitals in the conveyance to the purchaser shall be full evidence of the truth of the matters therein stated, and all prerequisites to the said sale shall be presumed to have been performed."

The deed of trust was for the better securing of the Guaranty State Bank of Ranger in a series of notes ranging in amounts from $3,000 to $6,000 and due at different times, beginning November 11, 1920, and con-

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tinuing to March 27, 1921, aggregating $106,-000. In the deed of trust W. P. Ralston was named as trustee, and it was provided that in case of the absence, death, inability, refusal, or failure of the trustee named, his successor and substitute may be named and appointed by the holder of said notes.

On July 1, 1922, John W. Thurman, designating himself as the legal owner and holder of said notes and reciting that the original trustee, Ralston, "is unable to act as trustee by reason of being out of the state of Texas," appointed one Adamson as substitute trustee. There was no evidence of Thurman's ownership or right to $56,000 of the notes of the building company, except as shown by affidavit of A. W. Taber, made on information and belief from the affiant's investigation of certain papers belonging to Thurman. On the 1st of August, 1922, Adamson executed and delivered to O. D. Dillingham a conveyance of said property for a recited consideration of $20,000. This deed recited the execution of the original instrument, the maturity of the notes, that Thurman was the legal owner and holder of said notes, that Ralston, the original trustee, had failed and refused to execute said trust, the appointment of Adamson as substitute trustee, and a regular sale by the substitute trustee after due advertisement as provided in the original deed of trust. The appellee objected to the abstract, among other things, on the ground that the instruments referred to were not sufficient to show a marketable title in the appellant claiming through and under them.

[1] The contract provided for an abstract showing marketable title. That term has been defined to provide for a title free from reasonable doubt and such as a prudent man well-advised as to the facts and their legal bearings could be willing to accept. Maupin on Marketable Title, pp. 767, 768, 769.

"In an action for a specific performance, if there arises during the progress of the suit, a reasonable doubt concerning the title to be made and given by the vendor, the court, without deciding the question between the parties then before it—which decision may not be binding on other persons and therefore might not prevent the same question from being raised by other persons claimants of the land—regards the existence of this doubt as a sufficient reason for not compelling the purchaser to carry out the agreement and accept the conveyance." Greer v. International Stockyards, 43 Tex. Civ. App. 370, 96 S. W. 79; Hughes v. Adams, 55 Tex. Civ. App. 197, 119 S. W. 134; Connely v. Putnam, 51 Tex. Civ. App. 233, 111 S. W. 164; Corbett v. McGregor (Tex. Civ. App.) 84 S. W. 278; McLaughlin v. Brown (Tex. Civ. App.) 126 S. W. 292; Fry on Specific Performance, § 862.

[2] Among titles which are classed as unmarketable are those cases where the title rests upon a presumption of fact which, from the circumstances of the case, would in the event of suit probably become an issue of fact to be decided by a jury. Maupin's Marketable Title, p. 776.

[3] Under these rules, if the title exhibited by appellant upon its face appeared to be reasonably doubtful, a court of equity would refuse a decree of specific performance, as equity does not ordinarily concern itself with questions relating to the title of real estate.

[4] In Devlin on Deeds, § 1497, p. 2696, it is stated that:

"Where a title is based upon a power of sale, a doubt may arise either as to the construction of the power or as to the existence of facts necessary to justify its exercise."

In Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736, in an action for specific performance by the executors under a will providing that they may sell or mortgage any of the real estate of the testator at any time it becomes necessary to do so, to pay expenses or bequests provided in the will, or for the purpose of saving or improving any of the testator's property, the court held that the power to sell was not absolute and could be exercised only for the purposes expressly named, and that under the circumstances as shown in the case it was not clear that the executors were authorized to make a sale for the price offered or in selling a tract so large as that sold, and that a title based on a contract by them to sell was not marketable.

[5, 6] The decisions in our state have repeatedly declared that to make valid a sale by the execution of a power of sale contained in a deed of trust, the provisions therefor must be strictly followed. A sale by substitute trustee appointed by one without authority is void. Wilson v. Armstrong (Tex. Civ. App.) 236 S. W. 755.

[7] The appointment of substitute trustee is not authorized under a deed of trust providing for such appointment in case the original trustee refused to act until demand had been made upon the original trustee and a refusal by him. Michael v. Crawford, 108 Tex. 352, 193 S. W. 1070.

[8] Appellant's contentions are that the deed of a corporation executed by its president under corporate seal is prima facie sufficient to constitute such a deed the act of a corporation under such decisions as Brownwood Ice Co. v. York Manufacturing Co. (Tex. Civ. App.) 37 S. W. 339, and Emory v. Bailey, 111 Tex. 342, 234 S. W. 660, 18 A. L. R. 901; that the trustee's deed was sufficient prima facie to convey title under the provisions of the trust deed above referred to. It is claimed that this contention is sustained by the decisions in Adams v. Zellner, 107 Tex. 653, 183 S. W. 1143, and Roe v. Davis, 106 Tex. 538, 172 S. W. 708, and that, therefore, the abstract as to these matters showed a marketable title.

Appellee's insistence is that under the rule as stated above he was not required to take a title which rested solely upon prima facie presumptions as to matters of fact. Appellant also claims that the evidence conclusively showed that the Guaranty Building Company had ratified the deed of trust and the sale thereunder.

[9] No specific authority from the director's of the building company authorizing the execution of the deed of trust was shown, but the abstract did disclose a resolution authorizing the execution of a blanket mortgage on the property of the building company. There is considerable doubt about whether a deed executed by the president of a corporation under its corporate seal conveying its real estates, without referring to or showing the previous consent of the board of directors, is a marketable title. The authorities declare that the rule which makes such a deed prima facie binding upon the corporation creates but a rebuttable presumption. Fitzhugh et al. v. Franco-Texas Land Co., 81 Tex. 311, 16 S. W. 1078. The only case to which we have been referred in which the precise point has been decided is the case of Womack v. Coleman, 89 Minn. 17, 93 N. W. 663, where it was held that a title is not unmarketable because a deed from a corporation executed by its president under its seal does not show authority of its officers to execute it. We regard that proposition as rather doubtful. In view of a large number of cases where deeds executed by the officers of a corporation under its corporate seal have been set aside for want of authority from the board of directors, it would seem reasonable that the purchaser of property, where the title is derived from a deed executed by the president of a corporation, should have the right to demand written evidence from the board of directors of the authority on the part of the corporation's agents to convey its real estate.

The decisions holding such a deed admissible, where all the parties at interest are before the court, are to be considered from a different viewpoint in this case, where all the parties at interest are not before the court, and consequently not bound by the decision. But we do not rest the decision herein made upon this point alone.

We do not believe that the appointment of Adamson as trustee by Thurman, without any showing as to Thurman's ownership of the notes or interest in the transaction other than his own declaration, the declaration of the substitute trustee in his deed, and the affidavit of Taber, is sufficient to constitute marketable title, or one free from a reasonable doubt. To permit a stranger to the trust to appoint a substitute trustee and the substitute to execute a deed reciting that the one appointing him had full authority, and then make these recitations evidence of the right of the first named to appoint the substitute, would be tantamount to affirm the physical power of one to lift himself by his own bootstraps.

[10] We believe that the purchaser was entitled to have some sort of written evidence from the Guaranty State Bank or its assigns as to Thurman's ownership of the notes in question and his right to proceed to enforce the collection of the same. The trustee could not foreclose except on the request of the holders of all the notes. Bomar v. West, 87 Tex. 299, 28 S. W. 519.

Another serious doubt is raised in regard to this title from the fact that the appointment of a substitute trustee merely recites his absence from the state. It has been concluded that the absence referred to in the deed of trust means somewhat more than a mere temporary absence. It appears that the absence contemplated should be either of a permanent or semipermanent nature. The appointment merely recites an absence and does not undertake to show anything as to the kind or character thereof. Moreover, this recital and appointment is contradicted by the recital in the deed by the substitute trustee, which was that the original trustee had failed and refused to act. Under the authorities cited, this failure or refusal must have occurred after a demand made on the original trustee. It must be understood that we are not passing upon the question as though the parties at interest were before the court. It has been said that:

"Though the court may entertain an opinion in favor of the title, yet, if it be satisfied that the opinion may fairly and reasonably be questioned, * * * it will refuse specific performance. * * * The court will never compel a purchaser to take title where the point on which it depends is too doubtful to be settled without litigation, or where the purchase would expose him to the hazard of such proceedings." Greer v. International Stockyards, 43 Tex. Civ. App. 370, 96 S. W. 79.

In Wesley v. Eells, 177 U. S. 377, 20 S. Ct. 664, 44 L. Ed. 810, it is said:

" 'It is not necessary that he should satisfy the court that the title is defective so that he ought to prevail in law; it is enough if it appear to be subject to adverse claims which are of such a nature as may reasonably be expected to expose the purchaser to controversy to maintain his title, or rights incident to it. * * * He ought not to be subject, against his agreement or consent, to the necessity of litigation, to remove even that which is only a cloud upon his title.' * * * 'Courts of equity do not force the purchasers to take anything but a good title, and do not compel them to buy lawsuits.' "

[11] In response to the objection, the substance of which has been discussed, the appellant produced a number of affidavits as tending to show the ownership in Thurman of the notes in question, and of ratification on the part of the Guaranty Building Com-

pany. They are not considered sufficient to remove the hazard of litigation presented upon the face of the abstract. As to the first point, the affidavits are made purely on information and belief and not by any one cognizant of the facts. As to the second none was by the agents of the building company authorized to act for it, and the affidavits therefore could not operate as an estoppel against the building company. The facts stated, in this affidavit were sufficient to raise the issue of ratification, but ratification is an issue of fact and to be effective, the acts committed must be done with the intention to approve the unauthorized act, and it is believed the affidavits are not sufficient to foreclose the question of fact as to the validity of the trustee's sale.

Upon the whole, it is concluded that the trial court was justified in holding that the title as presented to the appellee was not marketable, and the conclusions of fact and law of the trial court are approved, and the judgment is affirmed.